**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID MOSURE, et al., ) | CASE NO. 4:23-cv-1121 |
| ) | |
| PLAINTIFFS, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER OF TRANSFER** |
| SOUTHWEST AIRLINES, CO., et al., ) | |
| ) | |
| DEFENDANTS. ) | |

Ohio plaintiffs bring suit against a Texas-based airline for damages for personal injuries sustained during a flight from Florida to Pennsylvania. (Doc. No. 1 (Complaint).) Defendant has moved to dismiss for lack of personal jurisdiction and for failure to state a claim. (Doc. No. 4 (Motion to Dismiss); Doc. No. 4-1 (Memorandum in Support of Motion to Dismiss).) Plaintiffs oppose dismissal, and, alternatively, request that the case be transferred to the United States District Court for the Northern District of Texas. (Doc. No. 6 (Opposition to Motion to Dismiss).) Plaintiffs also seek leave to file an amended complaint. (Doc. No. 5 (Motion to Amend).) Defendant opposes the motion to amend (Doc. No. 7 (Opposition to Motion to Amend)), and it has filed a reply in support of its motion to dismiss. (Doc. No. 8 (Reply to Motion to Dismiss).) For the foregoing reasons, the motion to amend is denied, and this case is transferred to the Northern District of Texas.

### I. BACKGROUND

Plaintiffs, David Mosure ("Mosure") and Kristen Koval ("Koval") (collectively, "plaintiffs"), are married and reside in Boardman Township, Ohio. (Doc. No. 1 ¶ 4.) Defendant

Southwest Airlines, Inc. ("Southwest") is a corporation organized and existing under the laws of Texas and registered to do business in the State of Ohio. (*Id*. ¶ 5; Doc. No. 4-2 (Affidavit of Blake Whaling) ¶ 2.) Southwest's principal place of business is located in Dallas, Texas. (Doc. No. 4-221 ¶ 3.)

Sometime prior to January 29, 2020, Mosure used Southwest's internet website from his home in Ohio to purchase two round trip tickets for himself and Koval. (Doc. No. 1 ¶ 7.) The tickets provided that the flight would depart from Pittsburgh, Pennsylvania and arrive at Fort Lauderdale-Hollywood International Airport ("FLL") in Fort Lauderdale, Florida, with a return trip on January 29, 2020, from Fort Lauderdale to Pittsburgh. (*Id*. ¶¶ 8–9.) On January 29, 2020, plaintiffs boarded Southwest Flight 1079 at FLL for their return trip. (*Id*. ¶¶ 9–10.) Plaintiffs took their seats in the first row of the aircraft, with Mosure having previously stowed his wife's carry-on bag in the overhead storage compartment above their row of seats. (*Id*. ¶ 11.) During the flight, Mosure unbuckled his safety belt and retrieved his wife's carry-on bag from the overhead compartment. (*Id*. ¶ 12.)

Later in the flight, the captain announced that, due to turbulence, all passengers should return to their seats and buckle their safety belts. (*Id*. ¶ 13.) Plaintiffs allege that, notwithstanding the captain's order, a Southwest flight attendant ordered Mosure to return his wife's carry-on bag to the overhead compartment before he could take his seat. (*Id*. ¶ 14.) While Mosure was re-stowing the carry-on bag, the plane experienced turbulence and Mosure was thrown into a seat armrest and then onto the aisleway floor. (*Id*. ¶¶ 15–16.) According to plaintiffs, Mosure sustained immediate injuries to his neck, back, and torso. (*Id*. ¶ 16.)

On June 5, 2023, plaintiffs filed suit in federal court against Southwest and various John Does. (Doc. No. 1.) The complaint raised state law tort claims for negligence against Southwest and John Doe I (the unnamed flight attendant who directed Mosure to re-stow the bag) and a loss of consortium claim, brought by Koval. (*See generally id.*) According to the complaint, jurisdiction was based on the existence of a federal question, under 28 U.S.C. § 1331, and diversity of citizenship, under § 1332(a).[1] (*Id.* ¶ 1.)

Southwest moved to dismiss for want of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) was premised on federal preemption under the Federal Aviation Act and the Airline Deregulation Act. (*See* Doc. No. 4-1, at 13–20.) In support of Rule 12(b)(2) dismissal, Southwest underscores that the only connection between Southwest, a Texas corporation, and Ohio is the allegation that Mosure purchased the airline tickets on Southwest's website while he was physically located in his home in Ohio. Southwest notes that the website is equally accessible and available to residents of any state, and that all alleged conduct giving rise to plaintiffs' claims occurred in flight from Florida to Pennsylvania. (*Id.* at 10–12; *see* Doc. No. 4-2 ¶ 5.)

In addition to opposing dismissal and/or advocating for a transfer of venue to the Northern District of Texas, plaintiffs seek leave, pursuant to Rule 15(a), to raise unspecified allegations "to clarify its causes of action based on both federal and state law claims." (Doc. No. 5, at 1[2].) Plaintiffs

---

[1] As discussed more fully below, the nature of plaintiffs' proposed amendments is entirely unclear from their vaguely worded motion. (*See* Doc. No. 5, at 1.) Plaintiffs appear to hint that they intend to assert allegations that would support a cause of action under federal law. (*Id.*) At this juncture, however, the Court observes that plaintiffs have only pled state law tort claims for negligence and loss of consortium. Nevertheless, the question of whether the asserted claims sound in federal or state law is academic as similar considerations guide the personal jurisdiction analysis when subject matter jurisdiction is based on diversity or federal question.

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

insist that leave should be freely given here because their request comes in the early stages of the proceedings. (*Id.*)

## II. PERSONAL JURISDICTION

### A. Controlling Law

Southwest maintains that this Court may not exercise personal jurisdiction over it. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citation omitted). Where, as here, the parties have not conducted jurisdictional discovery and the Court has not held an evidentiary hearing, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* (citations omitted). In this procedural posture, "the pleadings and affidavits . . . are received in a light most favorable to the plaintiff," and the Court "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459 (citation omitted). The Court may, however, consider the defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996)).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless (1) courts of the forum state would be authorized to do so by state law[,] and (2) any such exercise of jurisdiction [would] be compatible with the due process requirements of the United States

Constitution." *Conn*, 667 F.3d at 711. Ohio's long-arm statute confers jurisdiction over a non-resident only if the defendant's conduct falls within one of nine bases for jurisdiction. Ohio Rev. Code § 2307.382(A)(1)-(9). "[T]he Due Process Clause requires that the defendant have sufficient 'minimum contract[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (quoting *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (further citation omitted)). Plaintiffs have failed to establish that this Court can exercise personal jurisdiction over Southwest under Ohio's long-arm statute, or that any such exercise would not violate due process.[3]

### B. Ohio's Long-Arm Statute

Plaintiffs claim that the Court has personal jurisdiction over Southwest pursuant to Ohio Rev. Code §§ 2307.382(A)(1), (A)(2), and (A)(4). (Doc. No. 6, at 4.) The Court considers each subsection in turn.

#### 1. Ohio Rev. Code § 2307.382(A)(1) (Transacting Any Business)

The first subsection of Ohio's long-arm statute provides that a court may exercise personal jurisdiction over any party "who acts directly or by an agent, as to a cause of action arising from a

---

[3] Traditionally, courts have interpreted Ohio's long-arm statute as not extending "jurisdiction to the fullest extent that the Due Process Clause allows[,]" necessitating a two "two-part analysis" that required the examination of whether Ohio's long-arm statute conferred jurisdiction *and* whether the exercise of personal jurisdiction would offend due process. *AmaTech Grp. Ltd. v. Fed. Card Servs.*, No. 1:21-cv-406, 2022 WL 44674, at *4 (S.D. Ohio Jan. 5, 2022) (citations omitted). Recent developments, however, have called this understanding into question. Effective April 7, 2021, Ohio's General Assembly amended the long-arm statute to permit a court to exercise jurisdiction under subsection (A) of the statute *and* "on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C). Following this change, courts have struggled with the reach of Ohio's long-arm statute, with some courts concluding that Ohio's long-arm statute now reaches to the fullest extent the U.S. Constitution permits. *See Predictive Conversations, LLC v. Leica Geosystems*, No. 5:22-cv-311, 2023 WL 4052471, at *3 (N.D. Ohio June 16, 2023) (discussing the various treatments by courts of Ohio's long-arm statute following the amendment and collecting cases). For purposes of the present motion, the dispute is purely academic, as the change only impacts challenges to general jurisdiction. *See AmaTech Grp.*, 2022 WL 44674, at *5 ("the new amendments . . . only come into play if the party is instead asserting general jurisdiction"). As discussed *infra*, plaintiffs have not asserted that the Court has general jurisdiction over Southwest.

5

person's: *(1) [t]ransacting any business in this state*[.]" Ohio Rev. Code § 2307.382(A)(1) (emphasis added). Without any documentary support or reference to any complaint allegations, plaintiffs suggest that Southwest is subject to personal jurisdiction under (A)(1) because Southwest:

> regularly advertises and sells and promotes its air services in the State of Ohio through various commercial mediums, including print, television and internet. [Southwest] carries on business in this State and through its [online] purchasing systems, [Southwest] in fact negotiates with customers like [p]laintiff Mosure through its online purchasing system. In the instant case, [p]laintiff Mosure ordered tickets over [Southwest's] website and purchased tickets online through his personal computer. [Southwest] conducts ticketing services for its commercial passenger business in this State.

(*Id.*[4])

Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Ins. Co. v. Alfi*, 425 F. Supp. 2d 876, 894 (S.D. Ohio 2006) (quotation marks and citation omitted). The plain language of the statute, however, dictates that the cause of action must "aris[e]" out of a defendant's contacts with Ohio. *See* Ohio Rev. Code § 2307.382(A). The Sixth Circuit has explained:

> [T]he Ohio long-arm statute requires a "proximate cause" relationship between the defendant's act and the plaintiff's cause of action. *Brunner v. Hampson*, 441 F.3d 457, 465–66 (6th Cir. 2006). A mere "but-for" connection is insufficient. *Id*. As a result, we have determined that the Ohio long-arm statute's "arising from" prong has less reach than the Due Process Clause, and, thus, due process need not be considered. *Id*.

*Lexon Ins. Co. v. Devinshire Land Dev., LLC*, 573 F. App'x 427, 429 (6th Cir. 2014).

Even assuming the truth of plaintiffs' unsubstantiated representations of marketing,

---

[4] Of course, a party's briefs or unsupported statements of counsel are not evidence and are not sufficient to counter a fully supported motion to dismiss for lack of personal jurisdiction. *See Bennett v. Louisville Metro Gov't*, 616 F. App'x 820, 823 (6th Cir. 2015).

advertising, and other business activity by Southwest in Ohio, these facts would have fallen short of demonstrating that Southwest's activity in Ohio was the proximate cause of Mosure's injuries. Plaintiffs seem to suggest that Mosure's use of Southwest's website to purchase the tickets set in motion a chain of events that ultimately led to his injuries. (Doc. No. 6, at 6.) But such a "but-for" connection is simply too attenuated to build the necessary bridge between the circumstances that caused the alleged injuries and any business activity in Ohio. *Lexon*, 573 F. App'x at 429; *see, e.g., Stenger v. Marriot Int'l Corp. Headquarters*, No. 1:15-cv-30, 2016 WL 223681, at *3 (S.D. Ohio Jan. 19, 2016) (hotel chain's business activities in Ohio were insufficient to subject it to the jurisdiction of the court where plaintiff's injuries were sustained in a hotel in Missouri); *Kaczmarek v. Res-Care, Inc.*, No. 1:13-cv-1959, 2013 WL 6276088, at *2 (N.D. Ohio Dec. 4, 2013) (employment discrimination action based on harassment occurring in Texas was unrelated to defendants' business transactions in Ohio).

There is no dispute that the alleged actions of the unnamed Southwest flight attendant during the flight from Florida to Pennsylvania were the proximate cause of Mosure's claimed injuries and give rise to plaintiffs' causes of action. (*See* Doc. No. 1 ¶¶ 23–25, ¶¶ 32–34, 37.) This fact, alone, prevents the Court from finding that plaintiffs have met their burden of showing that personal jurisdiction exists under any subsection of Ohio's long-arm statute.

### 2. Ohio Rev. Code § 2307.382(A)(2) (Supplying Services or Goods)

Additional reasons exist for finding subsections (A)(2) and (A)(4) inapplicable. Section 2307.382(A)(2) provides for personal jurisdiction over any party that "contract[s] to supply services or goods in [Ohio]." Ohio Rev. Code § 2307.382(A)(2). Again, the plain language of the statute undermines plaintiffs' position because it dictates that the party-defendant must supply

goods or services *in Ohio*. Southwest contracted with Mosure to provide air travel from Fort Lauderdale, Florida to Pittsburgh, Pennsylvania. Plaintiffs have failed to allege facts that, if believed, would establish that Southwest contracted with plaintiffs to provides goods or services in Ohio.[5] *See Brunner*, 441 F.3d at 464 (Canadian company arranging hunting trip to Canada with Ohio resident by telephone, fax, email, and mail does not provide a factual basis to show that the company supplied any goods or services in Ohio that would subject it to jurisdiction under Ohio Rev. Code § 2307.382(A)(2)).

Even where, as here, the Court decides the motion on the pleadings, briefs, and affidavits, "it remains the plaintiff[s'] burden to show the Court has personal jurisdiction over the defendant." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc*., 539 F. Supp. 3d 822, 827 (S.D. Ohio 2021) (citation omitted). Plaintiffs have not met their burden of showing that (A)(2) applies.

> 3. *Ohio Rev. Code § 2307.382(A)(4) (Causing Tortious Injury by an Act Outside Ohio)*

Section 2307.382(A)(4) provides for personal jurisdiction over a party who causes tortious injury in Ohio by an act or omission occurring outside of Ohio. In support of the application of (A)(4), plaintiffs posit that Southwest and its "flight crew members on [] Mosure's return flight from Florida caused [] Mosure to experience and suffer injuries upon his return to the State of Ohio." (Doc. No. 6, at 4 (internal punctuation omitted).) "[A] tortious injury is not considered to have occurred in Ohio[, however,] simply because a party continues to suffer from the effects after returning to Ohio." *Robinson v. Koch Refining Co*., No. 98AP900, 1999 WL 394512, at *4 (Ohio

---

[5] In support of finding personal jurisdiction under (A)(2), plaintiffs argue, once again without support or even reference to complaint allegations, that Southwest uses print, television, and internet to supply services or goods in the State of Ohio. (Doc. No. 6, at 4.) They suggest that Southwest and Mosure "entered into such a contractual agreement when Mosure purchased tickets online for his trip back and forth to Florida." (*Id*.) Again, the service provided—a flight from Florida to Pennsylvania—was not provided in Ohio.

8

Ct. App. June 17, 1999) (injuries sustained from exposure to chemicals in Illinois did not occur in Ohio "even though the plaintiff continued to feel the effects of the injury or experienced residual effects after returning home" to Ohio (citation omitted)); *see also Kopas v. MTR Gaming Grp.*, No. 2013-cv-233, 2014 WL 1356081, at *3 (Ohio App. Ct. Mar. 24, 2014) (Under (A)(4), "it is first essential to establish that a tortious injury occur in Ohio, although the act or omission takes place outside of Ohio." (quotation marks and citation omitted)).

Courts have flatly rejected plaintiffs' "portable tort theory," and it cannot serve as a basis for personal jurisdiction under (A)(4). *See, e.g., Kaczmarek*, 2013 WL 6276088, at *4 (rejecting portable tort theory, finding that a plaintiff cannot suffer a tortious injury outside of Ohio, then carry the injury to Ohio to create jurisdiction over an out-of-state defendant). Further, plaintiffs have failed to demonstrate that *any* subsection of Ohio's long-arm statute confers this Court with personal jurisdiction over Southwest. For this reason alone, the Court finds that it cannot exercise personal jurisdiction over Southwest. *See Brunner*, 441 F.3d at 467 (finding it unnecessary to reach the due process analysis where personal jurisdiction over the defendant was lacking under Ohio's long-arm statute (citation omitted)).

### C. Federal Due Process

In an abundance of caution, the Court also considers whether conferring personal jurisdiction would comport with due process. *See Conn*, 667 F.3d at 711 (citing *CompuServe*, 89 F.3d at 1262). Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (citation omitted). By failing to address Southwest's arguments relative to general jurisdiction—and limiting their discussion to specific jurisdiction—plaintiffs have waived any argument that general jurisdiction exists in this matter.

*See Wood v. U.S. Bank Nat'l Ass'n*, No. 5:17-cv-2234, 2019 WL 1255229, at *3 (N.D. Ohio Mar. 19, 2019) (A non-moving party's failure to address an argument in its opposition brief waives the argument (citations omitted)). Therefore, the Court need not discuss general jurisdiction, except to note that it would "require[] the defendant's contacts with the forum state [to be] of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Conti*, 977 F.2d at 981 (quotation marks and citation omitted). Plaintiffs' complaint allegations and briefing fail to make such a showing.

Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875 (citation omitted). The Court should also consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988) (citation omitted).

The purposeful availment requirement is "the sine qua non for in personam jurisdiction[.]"

10

*Mohasco*, 401 F.2d at 381–82. It protects a defendant from being subject to a court's jurisdiction as a result of "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 58 (1985) (quotation marks and internal citations omitted). The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe*, 89 F.3d at 1263 (quotation marks and citation omitted) (emphasis in original).

Plaintiffs argue that Southwest purposefully availed itself of the privilege of acting in Ohio by registering with Ohio's Secretary of State. (Doc. No. 6, at 5.) The Sixth Circuit has rejected the argument that a non-resident corporation consents to the jurisdiction of Ohio courts by virtue of its registration. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (holding that "the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction"). Courts within the Sixth Circuit rely on *Pittock* to find that registration, alone, is insufficient to confer personal jurisdiction. *See, e.g., Relyant Global, LLC v. Gibraltar-Caddell*, No. 3:22-cv-183, 2023 WL 3267757, at *3 (E.D. Tenn. Mar. 31, 2023) (relying on *Pittock* and finding that "designation of an agent for service of process is insufficient to establish personal jurisdiction" (collecting cases)); *Stehle v. Venture Logistics, LLC*, No. 3:19-cv-169, 2020 WL 127707, at *3–4 (S.D. Ohio Jan. 10, 2020) (similar). This Court agrees that binding precedent forecloses plaintiffs' argument.

Plaintiffs also argue that their claims arise directly out of Southwest's activities in Ohio, citing undisclosed promotional marketing and sales in Ohio. Plaintiffs, however, do not allege that their claims arise out of Southwest's marketing and sales activities in the state. Rather, their claims arise out of Southwest's employees' alleged actions in flight between Florida and Pennsylvania. Moreover, the online ticket purchase cannot be the sole jurisdictional hook to Ohio. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (quotation marks and citation omitted). The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284 (collecting examples). Accordingly, "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 285.

Here, Mosure's online ticket purchase is the only link existing in the record between Southwest and the State of Ohio. But Southwest did not target residents of Ohio or even Mosure, individually, with its website.[6] (Doc. No. 4-2 ¶ 6 ("Southwest's website and online ticket sales are not targeted specifically to Ohio or Ohio residents.")). The website was equally accessible to customers located in any state. (*Id*. ¶ 5.) Rather, it was Mosure who chose to access Southwest's website from his home in Ohio. This random and fortuitous connection to Ohio is insufficient, as "[d]ue process requires that a defendant be haled into court in a forum State based on *[its] own*

---

[6] Under Sixth Circuit law, even a highly interactive website must target residents of that state to confer specific jurisdiction. *See Neogen Corp.*, 282 F.3d at 890 (holding that "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state"). Faced with a properly supported motion demonstrating that the Southwest website was equally accessible to all U.S. citizens, and not targeted specifically to Ohio residents, plaintiffs bore the burden of coming forward with evidence that would support specific jurisdiction. *See generally id*. at 887–88. They failed to do so.

affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475 (emphasis added)); *see, e.g., Kim v. Korean Air Lines Co., Ltd.*, 513 F. Supp. 3d 462, 464 (D.N.J. 2021) (finding no specific jurisdiction where foreign airline's only connection to New Jersey was the plaintiff's online ticket purchase from New Jersey); *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 537–40 (D. Md. 2014) (in tort action against Alaskan airline for damages for loss of personal property during flight, district court lacked specific jurisdiction over airline where online ticket purchase from Maryland was airline's only connection to Maryland). Plaintiffs have failed to demonstrate that the requirements of federal due process have been met, and personal jurisdiction over Southwest is lacking for this additional reason.[7]

### D. DISMISSAL OR TRANSFER

Having determined that it cannot exercise personal jurisdiction over Southwest, the Court must decide whether to dismiss the case without prejudice or to transfer the case to another jurisdiction. Title 28 U.S.C. § 1406(a) provides that the Court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Plaintiffs suggests that, in the

---

[7] Plaintiffs also request leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a). (Doc. No. 5.) Plaintiffs' motion is problematic because they failed to attach a proposed amended complaint to the motion. "Normally, a party seeking an amendment should attach a copy of the amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc*., 747 F.3d 435, 444 (6th Cir. 2014) (citation omitted). A motion to amend alone, however, "may be acceptable so long as it puts the opposing party on notice of the content of the amendment." *Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761, at *6 (6th Cir. 2000) (quotation marks and citation omitted). In this instance, plaintiffs fail to provide such notice as they simply indicate that they wish to amend to "clarify [the] causes of action based on both federal and state law claims." (Doc. No. 5, at 1.) Although Rule 15(a) instructs courts to "freely give leave" to amend, that liberal policy does not apply to requests for leave that amount to nothing more than a boilerplate request. *See, e.g., Glick v. Farm Credit Servs. of Mid-Am., FLCA*, No. 5:09-cv-2273, 2010 WL 3118673, at *1 (N.D. Ohio Aug. 6, 2010) (denying motion to amend where plaintiff failed to "allege any additional facts or further articulate the basis for the claims asserted in the complaint, and indeed contains no substantive discussion whatsoever"). Accordingly, plaintiffs' motion to amend is denied.

event that the Court finds it lacks personal jurisdiction over Southwest, the interests of justice "would demand that this matter be transferred to the United States District Court for the Northern District of Texas[.]" (Doc. No. 6, at 11.) In support, plaintiffs note that Southwest is a Texas corporation and that it has its headquarters and principal place of business in Dallas, Texas. (*Id*. at 11–12 (citing Doc. No. 4-2 ¶¶ 2–3).)

The Court agrees that the interests of justice support a transfer. Plaintiffs represent, and Southwest does not dispute, that a district court in the Northern District of Texas would be able to exercise personal jurisdiction over Southwest. *See Maclin v. Reliable Reports of Texas, Inc*., 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) ("The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's state of incorporation and principal place of business." (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011))). Venue would also lie in that judicial district as it is where Southwest "resides[.]" *See* 28 U.S.C. § 1391(c)(2) (A corporate defendant "resides" in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"). Moreover, the accident that gives rise to plaintiffs' claims occurred more than three-and-one-half years ago. (*See* Doc. No. 1 ¶ 9.) If the Court elected to dismiss this case without prejudice, it is entirely likely that plaintiffs would be time-barred from raising their claims in any appropriate forum. *See, e.g*., V.T.C.A., Civil Practice & Remedies Code § 16.003(a) (two-year statute of limitations for personal injury claims brought under Texas law). A transfer to this appropriate venue would preserve plaintiffs' claims.

Southwest complains that the Court should not entertain such considerations because plaintiffs' claims are preempted by federal law, and any transfer would be futile because they will

14

be subject to dismissal in any new forum. (Doc. No. 8, at 9.) "[U]pon a determination that personal jurisdiction is lacking, [however,] a court should not dismiss a case on the merits, especially when it appears that another court with appropriate jurisdiction may resolve the issues between the parties." *Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005). Because it appears that the Northern District of Texas would have jurisdiction to hear this matter, the Court finds that the better course is to leave for that court any and all determinations on the merits.[8]

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend is denied and Southwest's motion to dismiss for failure to state a claim is denied without prejudice. Southwest's motion to dismiss for want of jurisdiction is granted in part and denied in part. This case is hereby transferred to the United States District Court for the Northern District of Texas.

**IT IS SO ORDERED**.

Dated: September 22, 2023

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[8] Southwest also argues that transfer would be inappropriate because plaintiffs previously filed a virtually identical action in state court in Ohio, only to voluntarily dismiss the action after Southwest raised the question of preemption. (Doc. No. 8, at 9–10.) Based on its view that plaintiffs' claims are preempted by federal law, Southwest maintains that it would not serve the interests of justice to reward plaintiffs with a transfer where they have twice raised substantively deficient claims. (*See id.*) Again, consideration of such an argument would require this Court to reach the merits of plaintiffs' claims. Southwest remains free to reassert its preemption arguments in the district court in Texas.